### 3963. MOORE v. THE STATE.

1. While, as a general rule, the right of counsel to argue as to occurrences which have taken place in the presence of the jury during the trial, and to suggest to the jury any inferences legitimately deducible therefrom, is not to be abridged, still, in a criminal case, the prosecuting attorney should not be permitted, over the defendant's objection, to express his individual opinion that the defendant then on trial is guilty, or to argue that the failure of the defendant to introduce testimony is attributable to a sense of conscious guilt.

2. Improper remarks of counsel will not work a new trial where timely objection is not made, or where it plainly appears that, under the law and the evidence, no other result was possible than that reached in the verdict rendered.

3. Other than as dealt with in the first and second divisions of the opinion, the trial was free from error.

DECIDED MARCH 19, 1912.

Indictment for sale of liquor; from Coffee superior court— Judge Parker. November 8, 1911.

*J. W. Quincey, C. A. Ward, W. A. Wood, F. Willis Dart,* for plaintiff in error.

*M. D. Dickerson, solicitor-general, McDonald & Willingham,* contra.

RUSSELL, J. Section 4957 of the Civil Code (1910) declares, that "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same; and, on objection made, he shall also rebuke the same, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the plaintiff's attorney is the offender." As pointed out by Justice Cobb in *O'Dell* v. *State,* 120 *Ga.* 155 (47 S. E. 577), this section is a codification of rulings contained in two criminal and two

civil cases,—*Croom* v. *State,* 90 *Ga.* 430 (4), (17 S. E. 1003); *Farmer* v. *State,* 91 *Ga.* 720 (2), (18 S. E. 987); *Augusta Railroad Co.* v. *Randall,* 85 *Ga.* 298 (6), (11 S. E. 706); *Metropolitan Street Railroad Co.* v. *Johnson,* 90 *Ga.* 501 (6), (16 S. E. 49). In the criminal cases above cited, and in the *Johnson* case, supra, the ruling was invoked; but in the *Randall* case, supra, the judgment was reversed even though it does not appear that a ruling was invoked. In the present case it appears, from the note of the presiding judge, that the defendant had twice moved to continue the case, on account of the absence of a witness, Roy Paulk, upon the statement that he expected to prove by this witness that the State's witness was of bad character, and not worthy of belief, and had made statements denying that he had bought the liquor from the defendant. In other words, the defendant had stated, upon the showing for a continuance, that he expected to elicit from the absent witness, for the purpose of impeaching the State's witness, evidence of the bad character of the State's witness, and also expected to prove by the absent witness that the State's witness had made contradictory statements as to matters material to the issue.

It appears, from the recitals of the ground of the motion for new trial, as approved by the trial judge, that the motion for a continuance was made on Tuesday, November 7, the day previous to that on which the trial was held, and the court did not at that time put the defendant to trial, but directed the sheriff to bring in the witness Paulk, and, when the case was tried on Wednesday, Paulk was present, and was sworn, but was not introduced by the defendant. In his argument to the jury J. N. McDonald, Esq., who was of counsel for the State, referred to the statement of counsel as to desiring the presence of the witness Paulk, and argued that the defendant had failed to introduce this witness or to prove by him what counsel said he expected to prove by him, and that the statement was made to continue the case solely for delay, adding, in his argument, "that the said statement had been made because the defendant knew he was guilty, and for the purpose of flim-flamming the court, and to continue the case, and . . that this was an evidence of the defendant's guilt." At the commencement of this part of the argument the defendant's counsel objected, upon the ground that there was nothing in the record, or before the jury, or in the evidence, to authorize this kind of argument, and that

it was prejudicial to the defendant's case, and requested the court to require counsel to desist from this kind of argument. The court overruled the objection, and held that it was permissible for counsel to argue before the jury anything that came up during the term of court in the presence of the jurors, in connection with the case, either during the trial or prior thereto, and that he would permit State's counsel to continue the argument along this line. The State's counsel thereafter proceeded with the argument, over the opposing counsel's objection.

The question presented by this assignment of error is twofold: (1) Was the argument unauthorized and prejudicial to the defendant? (2) If so, was the attention of the judge called to it, and his authoritative intervention so properly invoked as that his refusal to sustain the objection, and to endeavor to remove the impression made upon the mind of the jury by improper argument, was error, requiring the grant of a new trial? The proposition that argument not based upon evidence is, generally speaking, improper scarcely needs to be supported by citation of authority. The jury are sworn in every criminal case to render a true verdict according to the evidence, but, as the right of counsel to argue many circumstances which may legitimately appear upon the trial in connection with the taking of the testimony is not to be unduly prescribed, it is manifest that argument with reference to these matters is not to be inhibited, and that to confine counsel solely to the words of the testimony would be to give the rule too narrow a meaning. As the law allows the jury to judge of the manner of the witnesses on the stand, and to weigh their testimony by their interest in the case, and measure their credibility by various other circumstances which may present themselves to the attention of the jury during the trial, it is plain that the jury, in determining as to the credibility of testimony put before them, can consider some matters which would not come within the testimony itself. The testimony of a particular witness might make or disprove the case of guilt, and yet his manner, as a whole, might convince the jury that he did not speak the truth when he stated the facts by him related. Certainly anything that occurs in the presence of the jury, after they are impaneled, which could legitimately throw light on the credibility of any witness, or which could add or detract from the weight of his testimony, would be legitimately a subject-matter for their

consideration, and, consequently, proper subject of argument on the part of counsel.

In the present case, however, the statements which were being criticised by counsel were not addressed to the jury, but were made to the judge, in moving to postpone or continue the case. Juries have no duty in connection with the continuance of a case, and no power to affect a judgment upon the motion. The jury does not hear, as evidence in the case, the evidence relating to a motion for continuance; for they have no power to pass upon the sufficiency or credibility of such testimony. It is a matter solely for the court. On the motion for continuance the judge may disbelieve a witness whom the jury might believe, or on counter-showing he may believe a witness whom the jury would entirely discredit, so that in a technical sense the evidence submitted to a court, upon a motion for continuance or postponement, is not the evidence with which the jury have to deal upon the trial, or the evidence included in their oath. Plainly, then, the objection of the counsel for the plaintiff in error, that the argument was not authorized by evidence, is supported. Nor does it appear that the showing for continuance was made in the presence of the jury who actually tried the case. As the motion for postponement was made the day before the trial, the jury, of course, had not been impaneled. The particular twelve jurors to whom the argument of State's counsel was being addressed may have heard the statement of counsel on the day previous, or they may not. Until they were impaneled there was nothing to require their attention to evidence, and, furthermore, a portion of the jury might have been engaged in some other case at the time the case was called on a previous day, or some of them might have been temporarily excused from the court-room. There is nothing to show that the identical twelve men who were passing upon the issue of the defendant's guilt or innocence, and who had been sworn to determine that issue according to the evidence, were present the previous day and heard what transpired. Furthermore, the statement in reference to what was expected to be shown by the absent witness seems to have been made, not by defendant himself as a witness under oath, but merely as the statement of defendant's counsel in his behalf.

For all of these reasons it seems to us that any reference to the statements of the defendant's counsel the previous day, before the

jury were impaneled, can readily be determined to be improper, though not necessarily prejudicial; and certainly they are not ground for reversal, unless proper and timely objection was made. The rule seems to be well settled that, unless an objection is interposed and some ruling on the part of the court is invoked, a party will be deemed to have waived his right to objection, and, after verdict, will not be heard to assign error upon improper argument. As the converse to this proposition, it appears, from the cases cited, that where counsel indulges in argument unsupported by evidence, and not based upon any matter which occurred during the trial in the presence of the jury after they were impaneled, a new trial should be granted, if the intervention and protection of the court is invoked in the proper way and at the proper time, and is refused.

Practically the same point as is here involved seems to have been decided upon practically the same state of facts in *Blackman* v. *State,* 78 *Ga.* 592 (3 S. E. 418); and, while this ruling was not made by a full bench, the similarity between the facts in that case and in the instant one, as well as the soundness of its reasoning, would commend it as a safe precedent. In that case the court said (p. 595): "On the twenty-third ground of this motion we shall be compelled to send this case back for another hearing. That ground complains that the court, despite the objection of the defendant's counsel, permitted Edgar M. Butt, Esq., one of the counsel for the State, to refer in his argument to what the prisoner in his motion for continuance said he could prove, and to mention that the defendant had failed to prove what he said he could prove, and to insist upon this before the jury as an evidence of guilt. On the margin of the paper containing this ground of the motion there is the following note, signed by the judge: 'Defendant made a motion for continuance on account of absent witnesses; the court delayed the case and sent for and procured the absent witnesses; they were not introduced, and Judge Butt'—Here the note ends. It undoubtedly shows that he had not reached the end of what he intended to state; he probably intended to add more, but the record does not show what it was. Now this defendant, as appears from the record, had made a motion to continue this case for the absence of certain witnesses, by whom he expected to prove that he was not near the scene of the homicide at the time it took place.

These persons were sent for. They appeared, but he failed to introduce them. This motion was made, it will be remarked, before the jury was empaneled, and was probably made in writing, or if made orally, there was no evidence of it before that jury; and it was certainly a very damaging circumstance to allow counsel to proceed and argue the guilt of the prisoner from his failure to produce these witnesses; and when the court's attention was called to this subject, he should promptly have reproved the proceeding and admonished the jury that it was improper, and that they should give it no attention; but this he seems to have declined. Unless this was a case of circumstantial evidence so strong as to imperatively demand the finding the jury made, we can easily see how injury, and great injury, might have resulted to this defendant from such a course of proceeding. The defendant may be guilty, and may have been proved to be guilty, but his guilt could be established only by legal testimony properly introduced to the jury by witnesses with whom he was entitled to be confronted. Has the defendant had a fair trial with none but legal testimony before the jury? We think not; we can not undertake to say what influence the circumstances improperly insisted upon in the argument may have had upon the jury; and a new trial is therefore granted solely upon the 23d ground of the motion."

The State's counsel relies upon the earlier case of *Inman* v. *State, 72 Ga.* 269, as presenting a rule contrary to the rule laid down in the *Blackman* case, supra, and as controlling, because an earlier authority. We do not see that the decision in the *Blackman* case in any wise conflicts with the ruling in the *Inman* case. All that was said by the solicitor-general in the *Inman* case, as explained by the trial judge, was that the defendant had moved for a continuance on the ground of the absence of a witness, and when this witness was produced in court he did not have him sworn as a witness. The only comment of the solicitor-general upon the alleged facts was that counsel for the defendant had dilly-dallied with the case. There was no criticism of the defendant himself, nor any charge that the conduct of the defendant or of his counsel was influenced by any motive other than the desire for delay. There was not even a suggestion, in the argument of the State's counsel, that the conduct of the defendant's counsel was conclusive of the defendant's guilt, and certainly there was no as-

sertion, as in the present case, that that conduct was due to the defendant's consciousness of guilt. The most that appeared in the *Inman* case is that the solicitor-general criticised the delay in the case. But desire for delay, in some cases, might be consistent with the defendant's innocence. In the present case counsel for the State asserted unequivocally that the whole purpose was to "flim-flam" the court into granting a continuance, and that the witness was not produced because the defendant was guilty and conscious that he was guilty. In the *Inman* case Justice Blandford did not enter into a discussion of the principles involved, but seems to have decided the point merely with reference to the particular circumstances which surrounded it, and it did not appear that the argument necessarily concerned the question of the guilt or innocence of the accused. Furthermore, in the *Inman* case the defendant's counsel merely entered a general objection. He did not invoke any affirmative relief. In the *Blackman* case (while it is a later case) the reasons upon which it is based are stated, and the general result of permitting argument not authorized by evidence, and as to matters not addressed to the jury, was in the mind of the court. In comparing the decisions in these two cases it must be remembered, even if we adhere to the rule which gives authority to the older decision, that the subject was not at that time embraced in the code. All of the rulings to which we have referred as forming the basis of section 4957 of the Civil Code of 1910 were made subsequently to the decisions in these two cases, but in 1895 the legislature embodied those rulings in the code (Civil Code of 1895, § 4419), and for that reason, in so far as anything ruled in either of these cases conflicts with the code, it must yield to the express legislative mandate. As we stated above, it would seem to follow, from the rulings in which new trials were refused because no objection to the prejudicial argument was interposed at the time of the argument, that if objection had been interposed, as in the present case, a new trial would have been granted.

In our opinion, therefore, the question in every case turns upon whether the nature of the argument is such that it is manifestly improper and prejudicial to the rights of the opposite party. If the nature of the remark is such that it can plainly be seen that it could not have affected the result, the error would be harmless, and would afford no ground for a new trial. For this reason, if the ar-

gument was directed to some collateral matter not directly affecting the guilt or innocence of the accused in a criminal trial, though the argument might be improper, the error would seem to be immaterial. Under this head we might class criticisms of the defendant's appearance, style of dress, tone of voice, and physical defects. While such argument would be improper, it might not be prejudicial, though in some jurisdictions it has been held to be reversible error. On the other hand, if the statement is an expression of the personal opinion of the prosecuting attorney in a criminal case that the defendant is guilty, this is error, and it must be presumed to be prejudicial error, because cases can be imagined where counsel might be engaged for the prosecution whose personal opinion would have such weight with the jury as to unduly affect their finding upon the facts, or if the argument is such, although deducible from some of the evidence, as to address itself unfairly to passion or prejudice, as in the *Farmer* case, supra, this, if objected to, would afford ground for a new trial, because the argument is not legitimate. For the same reason, the pressing upon the jury of an inference drawn from facts outside of the evidence, or circumstances which may not rest within the knowledge of the jury, except from the statement of counsel, is manifestly improper; and, where the inference drawn from such unauthorized statements is adopted and used as conclusive evidence of guilt, it can not be said to be harmless.

When counsel in the present case asserted that the defendant was trying to "flim-flam" the court, because he had moved to continue his case, counsel was addressing an argument to the jury with which they had no concern. The argument might have been proper to the court in resisting the motion for continuance, but certainly the only effect of it before the jury would be to prejudice them against the defendant; for the question before the jury was not whether the defendant's motion for a continuance was meritorious, but whether he was guilty of the offense charged in the indictment; and counsel's statement that the defendant had not put up the witness because he knew he was guilty seems to us to be objectionable for the same reason that counsel for the State is not permitted to state to the jury that the defendant has not made a statement, or to argue, from the fact that the defendant has not made a statement, that it may be inferred that he is guilty of the offense charged.

The rule that the defendant's failure to make a statement can not be commented upon has been rigidly adhered to ever since it was laid down in *Bennett* v. *State*, 86 *Ga.* 401 (12 S. E. 806, 12 L. R. A. 449, 22 Am. St. R. 465). If the law, in its care for the rights of defendants and in seeing that they are accorded a fair trial, deems it no proper evidence of guilt that the defendant (who most frequently has it within his power to explain circumstances evidencing his guilt) makes no statement in his own behalf, it would seem that an inference of guilt, dependent only upon the fact that the defendant decided not to introduce a witness whom he had summoned, and whom he said he desired to use for the purpose of impeachment, would not rest upon a more substantial basis. If it is not permissible to argue that the defendant is probably guilty because he sits silently by and does not deny the truth of statements which he, above all others, must know to be false, when the jury can believe his statement in preference to sworn testimony, it would seem unreasonable that the law should permit the jury to presume that the defendant is guilty because he did not introduce a witness whom he had summoned for the purpose of impeaching a witness testifying against him. Incriminatory circumstantial evidence is faulty unless it produces such conviction as excludes any other reasonable supposition than the hypothesis claimed. It is just as reasonable to suppose that a defendant's reason for not introducing a witness he has subpœnaed is that the witness does not know, or will not testify to the fact that the defendant wishes to establish, as to entertain any other supposition that can arise; but the fact that that witness does not know or will not testify to the particular fact does not disprove the existence of that fact. On the contrary, the fact may be well known to others, who may or may not be present, and who may or may not testify.

Taking the facts of this particular case: The presence of the witness Paulk, as stated by the defendant's counsel, was desired because they expected, by his testimony, to prove the general bad character of one of the State's witnesses, and also contradictory statements on the part of the same witness. The jury saw the witness Paulk sworn by the defendant. The most that could have been argued from this by State's counsel, under any view of the case, would have been that, as the defendant did not introduce Paulk, the jury might reasonably infer that Paulk would not testify to the

general bad character of the State's witness, or to any contradictory statements made by the witness; and yet we do not think that from this the jury would have been authorized to infer that the defendant was conscious of his guilt or guilty. The defendant might have been misinformed as to what Paulk would swear, or, even if this was not the case, it sometimes happens that a witness will "talk" differently from what he will swear. Granting even that the defendant did not know that Paulk would swear as his counsel, on the motion for a continuance, stated that they expected him to swear, or that the defendant knew he would not swear either to the bad character of the State's witness or to any contradictory statements, this fact does not necessarily lead to the conclusion that the defendant was guilty and conscious of guilt, though it would have shown him to be acting in a most reprehensible manner, in attempting to "flim-flam" the court. It is reasonable to suppose that in many cases parties determine from developments in the case, not to introduce particular witnesses, and sometimes not to introduce any testimony, in order to gain the advantage of a concluding argument, or because the point which they desire to put in proof has already been established by testimony coming from the opposite side. Sometimes the bad character of the witness can be demonstrated by cross-examination as effectually as it would by testimony from the mouths of witnesses that they would not believe him on oath. The nature and manner of his testimony may be such as to satisfy the jury that they would not believe him on oath; and this is the all important desideratum. We conclude, therefore, that when the court gave sanction to the argument that an inference of guilt could arise from the fact that the defendant had not introduced the witness for the purpose of impeaching the State's witness, as it had been stated he intended to do, and permitted the counsel for the State to continue the argument, the jury were presumably misled and influenced by this argument to the prejudice of the defendant. But for this error we would unhesitatingly affirm the judgment, for there is no merit in the several exceptions to the charge of the court. The evidence would have authorized the conviction of the defendant, but the credibility of the State's witness was the issue in the case. The witness admittedly had a tremendous interest in the case, because he was charged with the same offense, and upon the result of the defendant's case

depended the acquittal or conviction of the witness. If the defendant in this case should have been acquitted, the guilt of the witness seemed to be inevitable. If the defendant in this case should be convicted, the witness had an excellent chance to be acquitted. If the defendant's omission to break down the testimony of this witness for the State, when it was in his power to do so, was due to the consciousness of guilt, as asserted by the State's counsel, it might have been conclusive to the jury. There was no evidence as to the defendant's inner consciousness, and the place of such evidence could not be supplied by an inference arising from his failure to introduce a witness, unless it could have been to prove his real reason for not introducing the witness. The mere non-introduction of a witness, where it was not claimed that the witness knew anything of the actual transaction, could not more reasonably raise such an inference than the fact that the defendant preferred not to surrender the right of having his counsel make the concluding argument.

The argument was improper and prejudicial. The court should have sustained the objection, and should at least have reproved counsel and instructed the jury not to regard the reference which had been made to the motives of the defendant, but to determine his guilt or innocence from the evidence before them.

*Judgment reversed.*

POTTLE, J., dissenting.

I agree with the State's attorney, that the accused "was guilty and knew he was guilty." I do not think it was improper for State's counsel to tell the jury that the defendant was guilty. A juror of average intelligence must have understood this simply to be counsel's contention under the evidence. If one is guilty, he necessarily knows it, and therefore the further contention of counsel that the accused knew he was guilty was not prejudicial. The Supreme Court has more than once held that counsel may allude in argument to what has occurred in the case "from the time it is called, through its entire progress, and the conduct of the party or his counsel in connection therewith is a proper subject-matter for argument." To my mind the point is controlled by *Inman* v. *State,* 72 *Ga.* 269 (3), nor do I think the ruling therein made was changed by the code.